UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

KELSEY TERRELL COOPERWOOD,    )
                              )
             Plaintiff,       )    Case No. 2:05-cv-111
                              )
v.                            )    HON. ROBERT HOLMES BELL
                              )
IAN MCDONALD, et al.,         )
                              )    **OPINION**
             Defendants.      )
_____)

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff has paid the entire filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c) and 28 U.S.C. § 1915A. The court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 1733 (1992). Applying these standards, the court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

    I.       Factual Allegations

Plaintiff Kelsey Terrell Cooperwood, an inmate at the Chippewa Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Inspector Ian McDonald, Assistant Resident Unit Supervisor Larry Hough, Deputy Warden Greg McQuiggin, Michigan State Police Sergeant William Smith, Assistant Attorney General John Walter, Prosecutor Brian Peppler, Judge Michael W. MacDonald, and Judge Nicholas J. Lambros.

Plaintiff alleges in his complaint that on August 26, 2003, Defendant Peppler contacted Defendant Smith and asked him to investigate Plaintiff regarding a complaint filed by Defendant MacDonald. Plaintiff states that he filed a lien against Defendant Michael MacDonald with the "Michigan Secretary of State UCC Division for infringement of his copyrighted name." Plaintiff was subsequently charged with three criminal counts. On April 6, 2004, Defendant Ian McDonald ordered the seizure of forty-five legal documents and issued a Notice of Intent (NOI). Plaintiff received a hearing on the NOI on June 7, 2004, after which the legal documents were ordered destroyed. Plaintiff attaches a copy of the hearing report to his complaint, which reveals that Plaintiff's UCC materials were seized because he was being prosecuted for his UCC activities by the Attorney General's Office. (See Exhibit C to Plaintiff's complaint.)

Plaintiff states that on May 24, 2004, Defendant Ian McDonald seized Plaintiff's outgoing mail and issued a NOI. Plaintiff received a hearing on the NOI on June 6, 2004, which determined that the letters to Anna and Kelissa Cooperwood contained references to Plaintiff running a business inside prison. Therefore, the mail was ordered to be destroyed. Plaintiff subsequently

contacted the United States Court of Claims and verified that it had never received a complaint previously sent by Plaintiff. Defendant McQuiggin refused to investigate the situation.

On September 23, 2004, Plaintiff attempted to send a petition for quiet title to the Michigan Supreme Court, but the document was seized by Defendant Ian McDonald and Plaintiff was given a major misconduct ticket. Plaintiff's ticket was later dismissed without a hearing. On November 5, 2004, and November 8, 2004, Defendant Ian McDonald seized and opened more of Plaintiff's mail in an attempt to determine Plaintiff's defense for his upcoming criminal proceeding. The subsequent hearing resulted in Plaintiff's mail being destroyed.

On March 4, 2005, Plaintiff appeared before Defendant Lambros for a pretrial examination. However, Plaintiff claims that the seizure of his legal material and outgoing mail prevented him from formulating a defense or from obtaining needed witnesses. Plaintiff alleges that Defendant Lambros stated that he did not have jurisdiction to prohibit other defendants from seizing and destroying defense documents and legal mail. In addition, Defendant Lambros ruled that Plaintiff was incompetent to proceed because of his inability to produce a defense or witnesses. Plaintiff claims that the named defendants have conspired with one another to deprive him of his fundamental rights and that he has even been hindered in his attempts to exhaust administrative remedies.

Plaintiff claims that Defendants conspired to deprive Plaintiff of his First Amendment right of access to the courts, his Fourth Amendment rights to a showing of probable cause before being charged with a criminal offense and to be free from unreasonable search and seizure, his Sixth Amendment right to represent himself, confront his accusers and compel witnesses, his Fourteenth Amendment right to substantive and procedural due process with regard to preparing a defense and

regarding his legal property. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

## II. Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177, 114 S. Ct. 1218 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994).

Plaintiff claims that Defendant Judges MacDonald and Lambros violated his constitutional rights by virtue of their judicial rulings on various issues. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991)("it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of person consequences to himself"); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v, Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11.

Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity. Accordingly, Defendant Judges MacDonald and Lambros are absolutely immune from liability. Therefore, Plaintiff may not maintain an action for monetary damages against them. 28 U.S.C. § 1915(e)(2)(B)(iii).

In addition, Defendants Peppler and Walter are also entitled to absolute immunity for their conduct in pursuing criminal actions against Plaintiff. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related is the prosecutor's conduct to his role of an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). As noted above, a prosecutor is absolutely immune for the initiation and

pursuit of a criminal prosecution. Accordingly, Defendants Peppler and Walter are entitled to immunity.

Plaintiff claims that the seizure of his legal property and outgoing mail violated his procedural due process rights. However, Plaintiff's complaint, as well as the attached documents, establish that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70, 94 S. Ct. 2963, 2981 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). As noted above, Plaintiff received a hearing on each seizure, during which he was allowed to state why the seized documents should not be treated as contraband. Therefore, Plaintiff's procedural due process claim regarding the seized mail and documents is properly dismissed.

In addition, the Substantive Due Process Clause does not provide any basis for relief. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205(1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir.1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Plaintiff's allegations in this case fail to meet this formidable standard and thus, he fails to state a claim that his substantive due process rights were violated.

Plaintiff also claims that his Fourth Amendment right to be free from unreasonable searches and seizures was violated. However, it has long been accepted that prison officials may inspect an inmate's ordinary mail. *See for example Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). Legitimate penological interests justifying this practice are obvious. "The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters." *Id.* at 577. In addition, in *Hudson v. Palmer*, 468 U.S. 517, 525-526, 104 S. Ct. 3194, 3199 (1984), the Supreme Court held that prisoners have no reasonable expectation of privacy in their cells, and upheld unannounced cell searches. The court notes that the same analysis would fully apply to searches of a prisoner's personal property such as nonlegal mail.[1]

Further, in *Hudson*, the United States Supreme Court noted that the same reasons which led it to conclude that the Fourth Amendment did not prohibit searches of a prisoner's cell, applied with equal force to seizures. *Id.* at 528 n 8. The Court stated that "[p]rison officials must

---

[1] Plaintiff has not alleged that his right to receive confidential legal mail has been violated. *Muhammad v. Pitcher*, 35 F.3d 1081 (6th Cir. 1994).

be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* The Supreme Court further stated that although the Fourth Amendment does not protect against seizures in a prison cell, an inmate's property cannot be destroyed with impunity, noting that the respondent in *Hudson* had adequate state remedies even apart from inmate grievance procedures. *Id.* This analysis applies equally to a prisoner's mail. Plaintiff in this case has not demonstrated the absence of adequate state remedies for Defendants' alleged misconduct. Therefore, plaintiff's claim that his Fourth Amendment right to be free from unreasonable searches and seizures was violated should be dismissed.

Plaintiff's remaining claims appear to relate to state criminal investigations and prosecutions in the state court system. It is unclear whether Plaintiff was actually convicted of a crime as a result of these prosecutions. Assuming that Plaintiff was so convicted, any claims regarding the unfairness of the state court proceedings must be brought as claims for habeas corpus relief under 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973). A claim that has been brought pursuant to Section 1983, may not be construed as a habeas corpus claim. *See Barnes v. Lewis*, No. 93-5698, 1993 WL 515483 (6th Cir. Dec. 10, 1993) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *Moore v. Pemberton*, 110 F.3d 22 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253 (c), (4) differing

fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).[2]

In addition, the related damages claims must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584 (1997). A claim for damages which hinges upon the validity of a conviction affecting the length of a prisoner's sentence does not accrue and is therefore not cognizable under Section 1983 until plaintiff has first established the invalidity of the conviction in the state courts or through a habeas corpus proceeding. Proof of the illegality of a conviction is a necessary element of the § 1983 cause of action. Unless a conviction has been reversed, there has been no injury of constitutional proportions, and thus no § 1983 suit may exist. *Heck v. Humphrey*, 512 U.S. at 482, 114 S. Ct. at 2370; *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995).

As declared in *Preiser* and reiterated in *Heck*, a challenge to the validity of a matter requiring habeas corpus scrutiny is not cognizable under Section 1983. Further, pursuant to *Heck*, a damages claim arising out of the same challenge, which *is* cognizable under Section 1983, does not accrue until plaintiff has had the conviction reversed or set aside. *Schilling*, 58 F.3d at 1086. Thus, since Plaintiff has not yet established the invalidity of any convictions in the state courts or in a federal habeas action, his related Section 1983 claim for damages has not yet accrued. Accordingly, if Plaintiff's state court proceedings have resulted in criminal convictions, his Fourth and Sixth Amendment claims regarding the handling of his state court prosecutions are properly dismissed as stated above.

---

[2] Moreover, it does not appear that plaintiff has exhausted his state court remedies as required for habeas corpus claims pursuant to 28 U.S.C. § 2254(b)(1).

Finally, if the state criminal proceedings have not yet been resolved, this court should abstain from addressing plaintiff's claims under the principles enunciated in *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* doctrine requires federal courts to abstain in cases where a state proceeding (1) is currently pending; (2) involves an important state interest; and (3) affords the plaintiff an adequate opportunity to raise constitutional claims. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995); *Nilsson v. Ruppert, Bronson & Chicarelli Co.*, 888 F.2d 452, 454 (6th Cir. 1989); *Parker v. Commonwealth of Kentucky, Bd. of Dentistry*, 818 F.2d 504, 508 (6th Cir. 1987). It appears from Plaintiff's complaint that the criminal prosecution arose out of allegedly improper communications between Plaintiff and a state court judge. Therefore, the state proceedings involve an important state interest. Plaintiff has not alleged any facts indicating that he would not have an adequate opportunity to raise his constitutional claims in state court. Therefore, Plaintiff's claims against Defendants MacDonald and Lambros are properly the subject of *Younger* abstention.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court dismisses the action, the court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

     This is a dismissal as described by 28 U.S.C. § 1915(g).

     A judgment consistent with this opinion will be entered.


Date:   June 13, 2005          /s/ Robert Holmes Bell
                                       ROBERT HOLMES BELL
                                       CHIEF UNITED STATES DISTRICT JUDGE